CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Raul Uriarte-Limon**, | Case No. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
| **Cooper Hardware, Inc.,** a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Raul Uriarte-Limon complains of Cooper Hardware, Inc.; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who uses a wheelchair.

2. Defendant Cooper Hardware, Inc. was the real property owner of the property located at or about 13871 Foothill Boulevard, Sylmar, California, in May 2015.

1

Complaint

3.   Defendant Cooper Hardware, Inc. is the real property owner of the property located at or about 13871 Foothill Boulevard, Sylmar, California, currently.

4.   Defendant Cooper Hardware, Inc. was the business operator of Cooper True Value Hardware, located at or about 13871 Foothill Boulevard, Sylmar, California (hereinafter referred to as the "Store"), in May 2015.

5.   Defendant Cooper Hardware, Inc. is the business operator of the Store currently.

6.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is

Complaint

founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. The Store is a facility open to the public, a place of public accommodation, and a business establishment.

11. Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

12. In May 2015, there were 11 parking spaces available for use by patrons of the store.

13. In May 2015, there was not a single accessible parking space marked and reserved for persons with disabilities available.

14. In May 2015, there was not a single van accessible parking space marked and reserved for persons with disabilities available.

15. Currently, there are 11 parking spaces available for use by patrons of the Store.

16. Currently, there is not a single accessible parking space reserved for persons with disabilities available.

17. Currently, there is not a single van accessible parking space marked and reserved for persons with disabilities available.

18. Paths of travel are another one of the facilities, privileges and advantages offered by Defendants to patrons of the Store.

19. In May 2015, although there were shelves and merchandise aisles open to customers for shopping, the paths of travel in and throughout the merchandise aisles were not accessible to wheelchair users because of the configuration of the Store.

20. In May 2015, Defendants had a practice of placing goods on the paths of travel inside the Store restricting passage to less than 36 inches in width.

21. In May 2015, Defendants had no policy or procedure in place to make sure that moveable obstructions such as containers and boxes were kept such that they did not block the paths of travel inside the Store.

22. Currently, although there are shelves and merchandise aisles open to customers for shopping, the paths of travel in and throughout the merchandise aisles are not accessible to wheelchair users because of the configuration of the Store.

23. Currently, Defendants have a practice of placing goods on the paths of travel inside the Store restricting passage to less than 36 inches in width.

24. Currently, Defendants have no policy or procedure in place to make sure that moveable obstructions such as containers and boxes are kept such that they do not block the paths of travel inside the Store.

25. Transaction counters are another one of the facilities, privileges and advantages offered by Defendants to patrons of the Store.

26. However, in May 2015, the transaction counter at the Store was more than 36 inches in height.

27. In May 2015, there was no lowered, 36 inch portion of the transaction counter at the Store for use by persons in wheelchairs.

28. In May 2015, Defendant crowded the transaction counter with merchandise that narrowed the clear width of the counter to less than 36 inches.

29. Currently, the transaction counter at the Store is more than 36 inches in height.

30. Currently, there is no lowered, 36 inch portion of the transaction counter at the Store for use by persons in wheelchairs.

31. Currently, Defendant crowds the transaction counter with merchandise that narrows the clear width of the counter to less than 36 inches.

32. Plaintiff visited the Store in May 2015.

Complaint

33. The plaintiff personally encountered these violations and they denied him full and equal access and caused him great difficulty and frustration.

34. Additionally, restrooms are one of the facilities, privileges and advantages offered by Defendants to patrons of the Store.

35. Even though Plaintiff did not personally confront the following barriers, the restroom at the Store is not accessible to wheelchair users.

36. In May 2015, the restroom door hardware was a traditional style knob that required tight grasping and twisting of the wrist to operate.

37. In May 2015, the restroom did not provide a 60 inch diameter turning radius.

38. In May 2015, there were no grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet in the restroom at the Store.

39. In May 2015, the flush control for the toilet was not mounted on the wide or open side of the toilet.

40. In May 2015, the paper towel dispenser in the restroom at the Store was mounted greater than 54 inches above the finished floor.

41. In May 2015, the soap dispenser in the restroom at the Store was mounted greater than 54 inches above the finished floor.

42. In May 2015, the restroom sink was mounted such that the rim was higher than 34 inches above the finish floor.

43. In May 2015, the plumbing underneath the sink was not wrapped to protect against burning contact.

44. In May 2015, there was a moveable obstruction placed under the sink that did not provide any knee clearance to wheelchair users.

45. In May 2015, the restroom mirror was mounted on the wall so that its bottom edge was higher than 40 inches above the floor and was not effectively used by wheelchair users.

Complaint

46. Currently, the restroom door hardware is a traditional style knob that requires tight grasping and twisting of the wrist to operate.

47. Currently, the restroom does not provide a 60 inch diameter turning radius.

48. Currently, there are no grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet in the restroom at the Store.

49. Currently, the flush control for the toilet is not mounted on the wide or open side of the toilet.

50. Currently, the paper towel dispenser in the restroom at the Store is mounted greater than 54 inches above the finished floor.

51. Currently, the soap dispenser in the restroom at the Store is mounted greater than 54 inches above the finished floor.

52. Currently, the restroom sink is mounted such that the rim is higher than 34 inches above the finish floor.

53. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

54. Currently, there is a moveable obstruction placed under the sink that does not provide any knee clearance to wheelchair users.

55. Currently, the restroom mirror is mounted on the wall so that its bottom edge is higher than 40 inches above the floor and is not effectively used by wheelchair users.

56. Plaintiff would like to return and patronize the Store but will be deterred from visiting until the defendants cure the violations.

57. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of

Complaint

accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

58. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

59. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42  U.S.C. section 12101, et seq.)

60. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

61. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone

Complaint

who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

62. Any business that provides parking spaces must provide handicap parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those handicap parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

63. Here, the lack of any accessible, compliant parking is a violation of the ADA.

Complaint

64. Here, the lack of a van accessible parking is a violation of the ADA.

65. Shelves and display units allowing self-service by customers at stores must be located on an accessible route. 1991 Standards § 4.1.3(12)(b). An accessible route must be at least 36 inches in width. 1991 Standards § 4.3.3.

66. Here, the failure to provide accessible paths of travel in and throughout the merchandise aisles is a violation of the ADA.

67. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

68. Here, no such accessible transaction counter has been provided in violation of the ADA.

69. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

70. Here, the failure to provide accessible restroom door hardware is a violation of the ADA.

71. In order for a bathroom to be considered accessible, it must provide unobstructed 60 inches in diameter of turning space. 1991 Standards § 4.23.3; 4.2.3; 2010 Standards § 603.2.1; 304.3.1.

72. Here, there is no such turning radius and the restroom is not accessible, in violation of the ADA.

Complaint

73. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

74. Here, the failure to provide compliant grab bars is a violation of the ADA.

75. Flush controls for accessible toilets must be mounted on the open or wide side of the toilet, i.e., not the side nearest the adjacent side wall. 1991 Standards § 4.16.5; 2010 Standards § 604.6.

76. Here, the failure to properly locate the flush control is a violation of the ADA.

77. If controls, dispensers, receptacles or other equipment is provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

78. Here, the failure to ensure that the wall mounted accessories (paper towel and soap dispenser) met the height requirement is a violation of the ADA.

79. Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3.

80. Here, the failure to ensure that the mounted sinks met the height requirement is a violation of the ADA.

81. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

82. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

83. Sinks must provide knee clearance of at least 29 inches in height. 1991 Standards § 4.19.2 and Figure 31; 2010 Standards § 606.2 and 306.

84. Here, no such knee clearance was provided and this is a violation of the ADA.

85. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

86. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

87. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

88. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the ADA.

89. Given its location and options, the Store is a location that the plaintiff will continue to desire to patronize but he has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

90. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

91. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

92. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-

Complaint

(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act and/or the California Disabled Persons Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: December 5, 2015                    CENTER FOR DISABILITY ACCESS

                                           By: _____
                                           Mark Potter, Esq.
                                           Attorneys for Plaintiff

Complaint